STATE OF TENNESSEE, *ex rel.* HENRY C. THOMPSON, COM-
PLAINANT, APPELLANT, *v.* W. M. CARR, DEFENDANT, AP-
PELLEE.

(*Nashville,* December Term, 1932.)

Opinion filed April 8, 1933.

CORNELIUS & McKINNEY, for complainant, appellant.

PITTS, McCONNICO, HATCHER & WALLER, W. E. NORVELL, JR., GARLAND S. MOORE, A. V. McLANE and J. G. STEPHENSON, for defendant, appellee.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

At a special municipal election to fill a vacancy in the office of councilman for the Twenty-fourth Ward of the City of Nashville, held on September 22, 1932, no candidate received a majority of the votes cast. The defendant, John H. Lechleiter, received a plurality, and the relator, Henry C. Thompson, received the next highest number of votes cast.

This suit was filed by the relator for the writ of *mandamus*, to compel the Board of Election Commissioners to hold a special run-off election, in which the voters may record their preference between the said Lechleiter and Thompson. In aid of this writ, the bill prays an injunction, restraining the Election Commissioners from certifying the election of Lechleiter.

The Chancellor dismissed the bill, and directed that the temporary injunction previously issued should not be continued by the relator's appeal, which was prayed and granted.

The charter of the City of Nashville, Private Acts of 1923, chapter 125, amended by Private Acts of 1925, chapter 379 and chapter 455, Private Acts of 1927, chapter 623, and Private Acts of 1929, chapter 52, provides for the election of councilmen by the voters of each of the twenty-seven wards of the city, and for a run-off elec-

tion in each instance whenever such election does not result in a majority vote for one of the candidates. Four of these wards were added by the amendments of 1925 and 1929, and in directing the election of the first councilmen from those wards provisions for a run-off election were made.

In each instance in which a run-off election is expressly authorized by the charter, the date for both the preliminary and run-off election is fixed.

The original charter Act, Acts 1923, chapter 125, section 6, providing for the run-off election supplementary to each general election for councilmen, contains the following direction for special elections to fill vacancies:

"Whenever any vacancy shall occur in said City Council more than ninety (90) days prior to a general city election, a special election to fill such vacancy shall be held on the first Thursday occurring after thirty days have elapsed since the happening of such vacancy, in the ward unrepresented by reason of such vacancy."

Construing the original charter Act of 1923 alone, without reference to the subsequent amendments, we think we would not be authorized by judicial construction to add to the direction for a special election to fill a vacancy the provisions for a run-off election, which the language of the charter applied only to general elections to be held simultaneously in all of the wards of the city. The recognized desirability of securing an entire council chosen by a majority vote of each ward does not necessarily include a similar legislative intent in the selection of a single member to fill a vacancy. And the fact that the express direction for a run-off election was omitted from the provision for special elections seems to us persuasive evidence that the legislature recognized this difference.

The charter amendments above referred to added three new wards to the city, and provided for special elections to be held to elect the first councilmen from those wards, making specific and express provision for run-off elections, if necessary to obtain a majority vote. These amendments were enacted by subsequent legislatures, and we do not think their action can be looked to as indicative of the legislative intent of a previous legislature in the enactment of the original charter. A clearly expressed legislative intent in the original charter might be imputed to a subsequent amendment of doubtful meaning, in order to harmonize the amendment with the original, but we do not think the subsequently enacted statutes can shed any light on the proper construction of the original. If, however, the charter and the amendments should be construed together, the repetition of the provisions for run-off elections would, in our opinion, only emphasize the fact that no such provision was included in the direction for a special election to fill a vacancy in a single ward, and would strengthen the conclusion that that omission was intentional, as expressing the legislative intent that the vacancy should be filled by a single election. It is the constant aim of courts to enforce statutes as written, and not to add to or detract anything from them by judicial construction.

It is contended by the relator that the direction for special elections to fill vacancies is not complete without the run-off feature, since it does not provide that a plurality vote is sufficient to elect a candidate. In the absence of such a provision, it is argued that a second election would be necessary to a choice whenever no candidate receives a majority of the votes cast.

We do not concur in this argument. The general elec-

tion statutes of the State provide for a plurality election of officers. Code, sections 2098, 2102. Run-off elections are the exception rather than the rule in our system of elections. And it is the general rule, against which we have found no authority, that "in the absence of a statute requiring more, a plurality of votes is sufficient to elect." 20 Corpus Juris, p. 205 (Elections, sec. 265), and authorities cited.

The decree of the Chancellor is accordingly affirmed.