89 N.J. Super. 349 (1965)
215 A.2d 47
CARMEN SEMINARA, PLAINTIFF-RESPONDENT
v.
MERCER D. SMITH, TOWNSHIP CLERK OF THE TOWNSHIP OF FRANKLIN, AND HARRY STILWELL, JR., DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 15, 1965.
Decided November 19, 1965.
*351 Before Judges CONFORD, KILKENNY and LEONARD.
Mr. Richard S. Cohen argued the cause for appellant Harry Stilwell, Jr.
Mr. David Linett argued the cause for respondent (Messrs. Gross, Weissberger & Linett, attorneys).
Mr. Joseph A. Hoffman argued the cause for Mr. Arthur J. Sills, Attorney General of New Jersey, amicus curiae.
The opinion of the court was delivered by CONFORD, S.J.A.D.
Defendant Harry Stilwell, Jr., who was certified by defendant municipal clerk as winner of an election to fill a vacancy in the office of councilman at large of Franklin Township, Somerset County, appeals from the decision of the Law Division voiding the certificate of his election and ordering a runoff election for the position. Plaintiff, who had been designated by the council as temporary holder of the position until the election and qualification of a successor, was adjudged rightful holder of the office pending the event of the runoff. The parties have informally stipulated, however, that plaintiff will not serve until the determination of this appeal.
The election to fill the vacancy was held at the general election on November 2, 1965. Stilwell received 3003 votes, plaintiff 2501, and a third candidate 962. Stilwell thus received a plurality but not a majority of the votes cast.
This controversy is controlled by the provisions of N.J.S.A. 40:69A-109 et seq., dealing with a Faulkner Act Council-Manager Plan D form of municipal government (article 12 of the act). Under the form of that plan adopted by Franklin Township, there are nine councilmen, four elected at large and one from each of five wards. In the *352 summer of 1965 one of the incumbent councilmen at large resigned. As noted, plaintiff was appointed by the council to fill the vacancy temporarily under N.J.S.A. 40:69A-114. That section also provides:
"Vacancies in the council shall be filled by election for the remainder of the unexpired term at the next general or municipal election occurring not less than 60 days after the occurrence of the vacancy, except that no election to fill vacancies in the council shall be held at the general election or municipal election, as the case may be, to be held in the last year of the term of the vacant office. * * *"
It is notable that this section on its face appears to contemplate that the election for the vacancy will "fill" the vacancy as a finality, for it does not mention runoff elections or specify that the winner must have obtained a majority of the total votes cast. Stilwell therefore argues that the general rule should apply, i.e., that the candidate obtaining the greatest number of votes should be declared the winner. 29 C.J.S. Elections § 241, p. 674; and see N.J.S.A. 40:69A-161. On the other hand, plaintiff contends that a requirement for a majority vote and a runoff in default thereof is properly to be read into section 114 by implication from N.J.S.A. 40:69A-160, 161, if not by the literal terms thereof.
Section 160, so far as here material, reads:
"At the regular municipal election in any municipality which has adopted articles 4 or 5, or 9 through 12, inclusive, of this act, the candidates receiving the greatest number and a majority of votes cast shall be elected to the respective offices; provided, however, that if:
(a) five councilmen at large are to be elected and 2 or more candidates for said office receive a majority of the votes cast the 5 candidates receiving the greatest number of votes shall be elected; or
(b) four councilmen at large are to be elected and 2 or more candidates for said office receive a majority of the votes cast the 4 candidates receiving the greatest number of votes shall be elected; or
(c) three councilmen at large are to be elected and 1 or more candidates for said office receive a majority of the votes cast the 3 candidates receiving the greatest number of votes shall be elected; or
(d) two councilmen at large are to be elected and 1 or more candidates for said office receive a majority of the votes cast the 2 candidates receiving the greatest number of votes shall be elected."
*353 Section 161, in material part, reads:
"In any regular municipal election referred to in section 17-11 [section 160], if a sufficient number of candidates do not receive a majority of the votes cast to elect the required number of councilmen at large, or no candidate for mayor or no candidate for ward councilman receives a majority of the votes cast for his respective office, a runoff election in the municipality or ward, as the case may be, shall be held on the fifth Tuesday next following such municipal election. The candidates for councilmen at large not elected at such municipal election, equal in number to twice the number of councilmen at large remaining to be elected, who received the greatest number of votes at such municipal election and the 2 candidates for mayor or for ward councilmen who received the greatest number of votes at such election, shall be the candidates for the office for which they were nominated, at such runoff election. * * * The candidate or candidates who receive the greatest number of votes at such runoff election shall be elected to the office or offices to be filled."
It will be seen on analysis of these sections that it is possible for some candidates to be elected councilmen at large without obtaining a majority of the votes cast either at the regular municipal election or at a runoff election. Indeed, for example, the incumbent councilman at large whose vacation of office occasioned the instant election was originally elected, we were informed at oral argument, at a runoff election by less than a majority of the total votes cast.
Plaintiff argues that the references to "the" and "any" "regular municipal election" in sections 160 and 161, respectively, comprehend the election to fill the vacancy here held, and that consequently the "majority of votes cast" and "runoff election" provisions of those sections are applicable. He resorts to the definition in the general election law, R.S. 19:1-1, as amended, of a "municipal election" as "an election to be held in and for a single municipality only, at regular intervals," as contrasted with the definition therein of a "special election" as meaning "an election which is not provided for by law to be held at stated intervals"; also dictionary definitions of the word, "regular." Applying these definitions, he finds that section 114 "provides the specific intervals for the holding of elections to fill vacancies."
*354 We cannot conclude that the vacancy provisions of section 114 call for the holding of municipal elections "at regular intervals." That section is invocable only on the special occasion of the fortuitous occurrence of a vacancy in the council. But in any case there is better guidance for the ascertainment of the legislative intent in respect of the meaning of the term "regular municipal election" in these sections of the Faulkner Act. As both sides to this controversy join in stressing, the Faulkner Act as a whole was adopted as essentially one, integral comprehensive plan for local government. Its different cognate provisions, adopted at one time, lend significance to each other. The term "regular municipal election" is found not only in sections 160 and 161 but also in the appropriate sections governing the election of councilmen under the formulation of each type of local government provided for by the Faulkner Act (e.g., N.J.S.A. 40:69A-84, 101, 107, 112), except where the members of the governing body are to be elected at the general election (e.g., N.J.S.A. 40:69A-78). Thus, for example, section 112, which is particularly pertinent here as part of the scheme of Council-Manager Plan D, provides:
"The municipal council shall consist of five members, unless pursuant to the authority granted under sections 1-13 or 1-19 of article 1 of this act, the municipality shall be governed by a council of seven or nine members. Members of the municipal council shall serve for a term of four years, except as hereinafter provided for those first elected, beginning on the first day of July next following their election. They shall be elected at large and by wards at regular municipal elections in the following manner: * * *." (Emphasis added)
It is perfectly clear that in the foregoing context the reference to "regular municipal elections" is to the normal periodic election in the municipality at which all the members of the governing body, or so many of them as are to be elected under any staggered system employed, are provided to be elected. There is no reason to doubt that the actual intent of the draftsmen of section 160 in referring to "the regular municipal elections" was to designate the same *355 "regular municipal elections" mentioned and specified in section 112 quoted above. The election to fill a vacancy under section 114 is not the "regular municipal election," so understood, whether it takes place at the time of the regular municipal election, or, as happened here, at the time of the general election. Compare the rule that "[a]n election to fill a vacancy is a special election, although held on the same day as a general election." See Hambright v. Martini, 5 N.J. Super. 609 (Law Div. 1949).
Note, also, that while under section 114 the time of holding an election to fill a vacancy can be either at the next municipal election or the next general election, depending upon when the vacancy occurs, "regular municipal elections" are held only in May unless the form of government employed calls for use of the general election (e.g., N.J.S.A. 40:69A-71, 150). Again, observe that entirely different provisions govern the method of nomination of candidates for offices in connection with "regular municipal elections," N.J.S.A. 40:69A-152, as compared with the comparable provision for nomination of candidates for an election to fill a vacancy as specified in section 114.
The only specific decision cited to us by the parties in a similar or closely comparable situation is that of State ex rel. Thompson v. Carr, 166 Tenn. 58, 59 S.W.2d 509 (Sup. Ct. 1933). That case involved an election for a vacancy in the Nashville city council and presented the question whether a runoff was required. The governing charter provided for ward elections, runoffs in the absence of majority votes, and for a special election to fill a vacancy. The latter provision was silent as to runoffs, and the court refused to read in such a requirement, finding that ordinary rules of statutory construction impelled that result notwithstanding "[t]he recognized desirability of securing an entire council chosen by a majority vote of each ward." (59 S.W.2d, at p. 510).
Plaintiff argues that if the face of the statute does not clearly justify a conclusion that the election for a vacancy is a "regular municipal election" within sections 160 and 161, *356 we should nevertheless arrive at that result to subserve the asserted over-all legislative policy in favor of majority elections under the Faulkner Act. He cites the expression in Trugman v. Reichenstein, 27 N.J. 280, 288 (1958), to the effect that "if a doubt lingered" it should be resolved in favor of a result which would call for a runoff. But in that case the doubt was as to how to compute the total number of votes cast in a regular election for the purposes of determining whether a candidate had received a majority thereof, within the meaning of section 160, the section which contains the unmistakable statutory mandate for a majority vote in certain contingencies. Here, on the contrary, the issue is whether to import sections 160 and 161 by implication into section 114, which does not even mention majority votes or runoffs.
Were the textual content of sections 114, 160 and 161 less plain in relation to the meaning of "regular municipal election" than we have concluded above, we would still have difficulty in discerning so strong and overriding a legislative policy for majority vote and alternative runoffs as to dictate their inclusion in the section for vacancy elections from which they are presently absent. As already noted, councilmen at large can be, and frequently are, elected without a majority vote under sections 160 and 161 as written. Apparently, an election for a vacancy can possibly be for a term of less than two months.[1] There is certainly no presumptive legislative desire that there should be a runoff, with its attendant additional expense and delay, in connection with an election to fill a short-term vacancy in a council office. Of course, the result to be arrived at in construing section 114 cannot depend upon whether the vacancy is for a short or long term, but the possibilities inherent in the result plaintiff contends for are illuminative.
*357 Finally, plaintiff argues that the position he takes is mandatory in order to avoid making the statute unconstitutionally special. But that contention rests on the premise that if an election for the vacancy were held at a May municipal election, it would incontestably have to be attended by the majority vote and runoff requirements. On that assumption it is argued that there is no rational basis for differentiating between vacancy elections at the municipal election and those at the general election. However, the asserted premise does not hold. We have already rejected the notion that merely because the election to fill the vacancy is specified by the statute to take place, in a particular contingency, at the time of the municipal election (we so construe section 114), it necessarily follows that the election to fill the vacancy is converted into the "regular municipal election" which, under sections 160 and 161, automatically entails the consequential features of majority vote and runoff. Our view is that each election, i.e., that to fill the vacancy and that for the election of councilmen in gross for the full new terms, is separate and distinct.
We hold that Harry Stilwell, Jr. was elected to fill the vacancy and that no runoff election is called for.
Judgment reversed; no costs.
NOTES
[1] Terms of councilmen end on July 1. Section 114 prohibits an election to fill a vacancy at the general election in the last year of the term of the vacant office, but does not prohibit such an election at the municipal election in the last year.